**William H. DEAN, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 36629.**

Court of Criminal Appeals of Texas.

March 18, 1964.

Rehearing Denied May 6, 1964.

Second Motion for Rehearing Denied June 10, 1964.

Warren Burnett, Odessa, Luther E. Jones, Jr., Corpus Christi, on appeal only, for appellant.

Timothy P. Woolston, Albuquerque, N. M., on motion for rehearing only, for appellant.

Dee D. Miller, Dist. Atty., Patrick H. Mulloy, Jr., Asst. Dist. Atty., Amarillo, and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The conviction is for theft from the person; the punishment, five years.

J. A. Williams sold his business on March 31 for a substantial sum of money. There-

after on April 3, about 11:15 p. m., he went to the Avalon Club. Shortly after Williams arrived, Bobby Manning approached and invited him to join him and his wife, Billie Manning, and June Clark at their table. They had several drinks and danced. Williams and June accepted an invitation to the Manning home for bacon and eggs. Soon after their arrival they began playing poker, but never ate. Appellant was by the side of Manning as they played three or four poker hands, which Williams won. Williams did not know appellant nor were they introduced. When only Manning and June were left, on the next poker hand, Williams saw appellant pass some money to Manning as the betting rose. While Williams was betting June's poker hand he saw one card dealt from the bottom to Manning, to whom he lost $250 or $300 on the hand. An argument and scuffle ensued, as Williams and June left. Williams had exhibited a roll of money during the game. Appellant was present during this time.

Williams took June home, and they were followed by Bobby Manning. After Williams left, Bobby talked with June at her house, and they went to the Ramada Inn Coffee Shop, arriving about 2:30 a. m. Bobby asked June to telephone Williams to come "Because he wanted to take the man's money." Then they went to the Holiday Inn and Manning rented two connecting rooms, Nos. 216–217, and registered under a fictitious name, address, and automobile license number. They dialed Williams' telephone number four or five times without success. At June's request Bobby returned her to the Ramada and from there she went home in a cab.

About 9 o'clock that same morning, April 4, in response to an invitation by telephone from Billie Manning, Williams went to room 216 at the Holiday Motel. According to Williams, he had $9,280 in cash on his person when he entered room 216. Out of sight, in the bathroom, Billie mixed Williams a drink from a pint of Old Crow and in a brief time mixed another drink for him, and shortly thereafter Williams passed out.

Early in the afternoon of the same day, while June was in a room at the Ramada, the appellant and Bobby came in together and left together. Bobby soon returned, alone, and told June that Billie (his wife) had contacted Williams that morning and had taken $400 from him. Later, the same day, Bobby told June that he thought more money was involved and that appellant had gone back to the room to get Williams. Bobby also gave her some money which she thought was to be used to pay for the room at the Holiday Inn.

When Williams awoke that afternoon, he was lying on the bed in room 216 with his trousers down around his ankles and the appellant was feeling around the band of his (Williams') trousers and searching his pockets, but Williams was not in physical condition to do anything about it. Williams did not know the appellant but recognized him as the man he had seen at the Manning's just after midnight. Appellant gave Williams a drink of water and Williams passed out again. About 4 p. m., the appellant stopped the car he was driving at the office of the Holiday Inn, said he had an intoxicated man in the car, used the telephone, and drove away with the man slumped over in the car. The next thing Williams remembered it was about sundown on the same day, and he and appellant were riding around in Williams' car, with the appellant driving. About dark, they parked near the Manning house. Williams got out, his legs buckled, and he sat down in some water. While this was occurring, the appellant cut off the car ignition and lights, and ran from the scene.

Later, on searching his car, Williams found a capsule and an almost empty pint bottle of Old Crow, which he delivered to the police. A chemist testified that this capsule contained a barbiturate known as seconal, and expressed the opinion that a

person could be rendered unconscious by drinking alcohol mixed with two of such capsules; and that one capsule taken while a person was quiet would cause him to sleep from four to six hours.

Williams testified that. he had $9,280 in money taken from his person in the motel room without his knowledge and without his consent.

An employee of Holiday Inn identified the appellant as the same person who paid a bill on April 9, in cash, and testified that appellant said at the time he was paying the bill that he thought it had already been paid because he had left the money therefor with a woman.

The appellant did not testify, but offered testimony that Williams had reported the loss of different sums of money less than $9,280; that Williams also indicated or said that persons other than appellant got his money; and, further, that this case would not go to trial as they would pay off, and he would end up with appellant's elevators.

Johnny Austin, a porter at the Holiday Inn, while testifying, identified both the appellant and Williams, who was brought into the court room, as the same and only persons he saw in rooms 216–217 when he responded to a call about 3 p. m., April 4, and was asked to make coffee. He further testified that during this time Williams asked him "where is my money?" and that the appellant and Williams later came by the office in a car.

By brief and oral argument the appellant insists that the evidence is insufficient to sustain the conviction, and that the verdict does not support the judgment.

■ From a consideration of all the facts and circumstances as shown in the summary of the evidence, it is concluded that the evidence is sufficient to sustain the conviction.

The charge, among other requirements, authorized a conviction if the money was fraudulently taken from the person and possession of Williams, without his knowledge *or* consent, with the intention to deprive him of its value, and to appropriate it to the use and benefit of the appellant.

In his next contention, appellant insists that the charge requiring a finding of only one of these elements to convict rendered the verdict insufficient to support the judgment of conviction, the indictment having alleged that the taking of the money was without the consent *and* without the knowledge of Williams.

There were no objections to the charge of the court and no requested charges.

To constitute the offense of theft from the person, the court charged the jury that as provided by statute the following was necessary:

"(1) The theft must be from the person; it is not sufficient that the property be merely in the presence of the person from whom it it is taken.

"(2) The theft must be committed without the knowledge of the person from whom the property is taken * * *."

■ When the charge is construed as a whole, along with the provisions of the statute, the indictment and the evidence, there is no showing of injury to the rights of the appellant. Robinson v. State, Tex. Cr.App., 39 S.W. 107.

The judgment is affirmed.

*Opinion approved by the Court.*

## ON APPELLANT'S MOTION FOR REHEARING

WOODLEY, Presiding Judge.

In his motion for rehearing the appellant urges that the charge is fundamentally erroneous in that it authorized conviction without the essential finding that the money

was taken both without the knowledge of Williams and without Williams' consent.

The court, after charging the jury in terms of the statute that the theft must be committed without the knowledge of the person from whom the property is taken, instructed the jury that if they found that the defendant did fraudulently take from the person and possession of J. A. Williams, "without his knowledge or consent," the property described in the indictment with intent to deprive the owner of its value and to appropriate it to his own use and benefit they would convict.

This is not a case where the disjunctive "or" was used when the conjunctive "and" would have been proper.

A better form would have been to require the jury to find that the money was taken from the person of Williams "without his knowledge and without his consent."

The jury having been instructed in the language of the statute that it was necessary to constitute theft from the person that the theft be committed without the knowledge of the person from whom the property is taken, the jury could hardly have been misled by the use of "knowledge or consent" into believing that they need not find that the property was taken without the knowledge of Williams.

Garza v. State, 162 Tex.Cr.R. 655, 288 S.W.2d 785, does not support appellant's contention that no objection to the charge was required. In that case the charge was fundamentally erroneous in that the offense alleged was the possession of beer in a dry area for the purpose of sale, and conviction was authorized without the jury being required to find that the defendant possessed *beer* for the purpose of sale.

In Holloway v. State, 168 Tex.Cr.R. 264, 324 S.W.2d 886, there was an issue of fact as to whether the assault was made with a knife, as alleged in the indictment, or with a can opener, and it could not be ascertained from the verdict, in light of the court's charge, which instrument the jury found to be a deadly weapon.

In the case before us there was no evidence raising the issue that the money, if taken from the person of Williams, was taken with his consent, though without his knowledge, or was taken with his knowledge, though without his consent.

Holloway v. State is further distinguished by the fact that Holloway excepted to the charge and pointed out that the jury was not required to find that a knife was used in making the assault.

 We overrule the contention raised by the appellant that conviction herein operates to deprive him of his liberty in violation of the due process clause. U. S. Constitution, 14th Amendment.

Appellant's motion for rehearing is overruled.